ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By: MAXINE S. MAK (031158)
JONATHAN C. SIMON (029750)
Deputy County Attorneys
makm@mcao.maricopa.gov
simonj@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendants Sandoval & Spaulding

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Ted Hernandez,<br><br>Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>Defendants. | NO. CV 19-05623-PHX-DWL (JZB)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants, Officer Sandoval ("Sandoval") and Sergeant Spaulding ("Spaulding") move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure as to Plaintiff's First Amendment legal mail claim and Sixth Amendment right-to-counsel claim.

**I.     Introduction and statement of facts.**

This First Amendment legal mail and Sixth Amendment right-to-counsel claim arises out an allegation that Defendants opened a 651-page letter that Plaintiff sent to his attorney on or about March 24, 2019. [Defendants' Separate Statement of Facts (DSOF), Ex. 3; Hernandez Dep., 59:19-21.]

1

Plaintiff was in custody of the Maricopa County Sheriff's Office from February 25, 2010 to November 19, 2019. [DSOF 1.] On March 24, 2019, at approximately 10:45 p.m., Plaintiff submitted an Inmate Legal Request asking Inmate Legal Services (ILS) to mail a 651-page letter to his defense attorney. [DSOF 2.] The letter was bound with rubber bands, placed into a white cardboard box, taped shut and placed outside of the Level 4 control office. [DSOF, Ex. 1, Attach. 1.] ILS received Plaintiff's request on March 25, 2019, and mailed the 651-page letter with attachments, returning a copy to Plaintiff on March 27, 2018. [DSOF 3.] Plaintiff alleges that on April 22, 2019, his attorney, Josephine Bidwill advised him that the 651-page letter arrived at her office torn open and taped shut. [DSOF 4.] No one has told Plaintiff that Sandoval and/or Spaulding opened his legal mail. [DSOF 5.] Plaintiff has not seen any documents indicating that Sandoval and/or Spaulding read his legal mail. [DSOF 6.] Plaintiff does not know whether Sandoval and/or Spaulding read his legal mail. [DSOF 7.]

  **A.** **Mail procedures at MCSO.**

    **1.** **Incoming mail.**

All incoming mail addressed to inmates in MCSO custody is processed by the Central Mailroom which is located at the Lower Buckeye Jail. [DSOF 8.] In late 2018, the Central Mailroom began photographing envelopes of legal mail received from the United States Post Office (USPS). [DSOF 9.] Around the same time, the Central Mailroom began documenting irregularities noted in legal mail received from the USPS such as damage to the envelope or unsealed envelopes in the jail's data management system. [DSOF 10.] After searching, sorting and documenting the mail, Central Mailroom staff deliver the mail to the various jail facilities. [DSOF, Ex. 4, ₱ 7.] Incoming inmate mail delivered to the Fourth Avenue Jail is processed by the Custody Bureau Intelligence Unit (CBIU) before it is delivered to inmates by housing unit officers. [DSOF 11.]

CBIU officers sort the incoming mail into legal and non-legal mail. [DSOF 12.] Non-legal mail is searched or reviewed for security purposes. [DSOF 13.] Mail is screened to identify that which is subject to subpoena. Non-legal mail addressed to an inmate that is the subject of a mail subpoena is copied and the copy placed in the inmate's subpoenaed mail

2

file. [DSOF 14.] Legal mail addressed to an inmate under a mail subpoena is not opened, read or copied, but a copy of the front of the envelope and the back if there is writing on the back is made and placed into the inmate's subpoenaed mail file. [DSOF 15.] All CBIU officers participate in fulfilling subpoenas for inmate mail, CBIU officers are not assigned specific inmates when processing mail to respond to subpoenas. [DSOF 16.] Once the CBIU processes the mail, it is taken to the Level 1 mailroom and placed in a bin designated for each housing unit. [DSOF 17.] Housing unit officers pick up the incoming mail and distribute it to inmates. [DSOF 18.] CBIU officers do not deliver inmate mail. [DSOF 19.]

### 2. Outgoing mail.

Outgoing mail at the Fourth Avenue Jail is collected by housing unit officers and placed in the Level 3 briefing room. [DSOF 20.] Each morning, CBIU officers collect outgoing mail from the Level 3 briefing room for processing. [DSOF 21.] As is the case with incoming inmate mail, all CBIU officers participate in processing outgoing mail for subpoenas and officers are not assigned specific inmates when processing mail to fulfill subpoenas. [DSOF 22.] If the outgoing non-legal mail is a postcard and the inmate is under a mail subpoena, the front and back of the postcard is copied and the copy is placed in the inmate's subpoenaed mail file. [DSOF 23.] If the outgoing non-legal mail is enveloped mail, a copy of the envelope and its contents are copied, and the copies are placed in the inmate's subpoenaed mail file. [DSOF 24.] If the outgoing mail is legal mail, it is not opened and the contents are not copied or read, but the envelope is copied, and the copy is placed in the inmate's subpoenaed mail file. [DSOF 25-26.] Once the CBIU finishes processing the outgoing mail, it is taken to the Level 1 mailroom and deposited in the outgoing mail bin where it is picked up by the Central Mailroom courier. [DSOF 27.]

#### a. Outgoing legal mail sent through Inmate Legal Services.

If an inmate elects to send outgoing legal mail through ILS, they must complete an ILS request form and give the completed form with the outgoing mail to the housing unit officer. [DSOF 28.] Housing unit officers deliver the request to ILS. ILS places the outgoing legal mail in an envelope or box, seals it and deposits it in the outgoing mail bin located in the Level 1 mailroom for the Central Mailroom courier to pick up. [DSOF 29.] The Central

3

Mailroom courier picks up the outgoing mail at approximately noon each day and delivers it to the Maricopa County mailroom. [DSOF 30.] ILS does not deliver outgoing mail that they process to the CBIU for inspection and the CBIU does not go to the ILS office to pick up their outgoing mail for inspection. [DSOF 31.]

**B.   MCSO mail policy.**

Under MCSO policy, legal mail may only be opened in the inmate's presence. [DSOF 32.]

**C.   Spaulding and Sandoval.**

Spaulding is a Detention Sergeant who was assigned to the CBIU from July 2014 to June 2019. [DSOF 33.] Spaulding was on leave between March 13, 2019 and June 17, 2019. [DSOF 34.] Spaulding was assigned to the Lower Buckeye Jail upon her return from leave. [DOSF 35.] Sandoval is a Detention Officer who was assigned to the CBIU at the Fourth Avenue Jail from February 2016 to July 2019. [DSOF 36.] Sandoval is not and was not a supervisor in the CBIU. [DSOF 37.] Sandoval was out of the office on March 24 and 25, 2019. [DSOF 38.] Sandoval worked at the jail all day on March 26 and was out of the office for part or all day on the 27th. [DSOF 39.] While Sandoval and Spaulding have processed Plaintiff's mail, they did not open Plaintiff's properly marked legal mail. [DSOF 40-41.]

**D.   Plaintiff's assertions.**

Plaintiff claims that Sandoval and Spaulding opened his 651-page letter to his lawyer springs from several allegations and inferences drawn from those allegations. According to Plaintiff, it was "general knowledge" that jail intelligence officers were opening inmate legal mail. [DSOF, Ex. 3, 44:17-25, 45:1-2.] Plaintiff asserts that Sandoval and Spaulding are supervisors in the CBIU. [DSOF, Ex. 7 at 11, 15; DSOF, Ex. 8 at 11, 17.] Plaintiff believes that all CBIU officers were reading and copying his mail, then distributing them to law enforcement and the Maricopa County Attorney's Office, and as supervisors, Sandoval and Spaulding were responsible. [DSOF, Ex. 7 at 15; DSOF, Ex. 8 at 17.] Plaintiff testified that Spaulding and Sandoval were "both in contact with the prosecutor who was … looking for any information on me." [DSOF, Ex. 3, 45:13-16.] To obtain this information, Spaulding and Sandoval were "reading and scanning all of [his] mail." [DSOF, Ex. 3 at 45:18-19.]

Further, Plaintiff asserts that on "March 2, 2018, the MCSO Jail Intel Unit was served with a subpoena for all of my incoming and outgoing mail . . . excluding legal mail" and Sandoval and Spaulding were the individuals responsible for fulfilling the mail subpoena. [DSOF, Ex. at 7 at 20; Ex. 8 at 22.] Based on copies of envelopes of the mail that he received from the prosecutor in his criminal case or comments in MCSO records documenting the condition of his incoming mail when it was received from the USPS, Plaintiff infers that Sandoval and Spaulding opened those envelopes of mail. [DSOF, Ex. 7 at 19-21; Ex. 8 at 21-23.] And because Sandoval and Spaulding "reportedly" handled his incoming and outgoing legal mail and CBIU officers including "*possibly*" Sandoval and Spaulding were found to be unethical, to have violated "pre-trial detainees attorney-client privileged communications, such as but not limited to; opening pre-trial detainees legal mail; sending copies to law enforcement; then lying about their involvement and/or their coworker's involvement when questioned by the Courts," Plaintiff believes that they opened his 651-page letter to his lawyer. [DSOF, Ex. 7 at 20; DSOF, Ex. 8 at 22.]

## II. Summary judgment standard.

When the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment must be granted. Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party's burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the moving party meets this initial burden, the burden is shifted to the opposing party, who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). An inference is more

than a possibility, "[a]n inference ... is a deduction of one fact from another proven fact by the ordinary rules of logic and reason." *Constar, Inc. v. Plumbers Local 447*, 568 F.Supp. 1440, 1445 (E.D.Cal.1983) (citing 1 J. Weinstein & J. Berger, Weinstein's Evidence ¶ 300 [01] at 300–2 (1982)), aff'd, 748 F.2d 520 (1984).

## III. First and Sixth Amendment standards.

"[Inmates] have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017). Criminal defendants have the Sixth Amendment right to assistance of counsel. *Gideon v. Wainright*, 372 U.S. 335, 339-41 (1963). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014). Accordingly, jail officials may not read an inmate's outgoing legal mail to their attorney. *Id*. To establish a Sixth Amendment violation, a plaintiff must establish that his right to privately confer with his counsel has been "chilled." *Hayes*, 849 F.3d at 1212; *Nordstrom*, 762 F.3d at 911.

## IV. There is no evidence that Defendants opened or read any of Plaintiff's legal mail.

As Plaintiff cannot show that his mail was opened by Sandoval or Spaulding, he cannot establish that they "chilled" his communications with his counsel by opening his legal mail. Both Sandoval and Spaulding aver that they did not open Plaintiff's properly marked legal mail that was sent to or received from his counsel. [DSOF 40-41.] No one has told Plaintiff that Sandoval or Spaulding opened his legal mail and Plaintiff has no documents implicating them in the opening of any of his legal mail. [DSOF 5-6.] Plaintiff does not know whether Sandoval or Spaulding opened his legal mail. [DSOF 7.] Plaintiff's claims that the MCSO allowed Sandoval and Spaulding access to his legal mail for the purpose of reading it, but MCSO policy prohibits opening legal mail outside of the inmate's presence. [DSOF 32.] Plaintiff's general allegation that the CBIU was "read[ing], scan[ing], and cop[ying] all of [his] mail," (Doc. 76 at 17) is overbroad and inaccurate. While it is true that Plaintiff's mail was subject to subpoena, the evidence which shows that Plaintiff's non-legal mail was scanned, copied, or subject to being read, but his legal mail was not. [DSOF

6

15-16, 23-26.]

Records show that Plaintiff delivered the 651-page letter to a detention officer on March 24 where it was delivered to ILS the next day. [DSOF 2-3.] There is no evidence that Sandoval or Spaulding ever came into possession of the letter. In fact, Spaulding was on leave when Plaintiff submitted the letter for copying and mailing and thus, could not have opened the letter or read its contents. [DSOF 34.] Sandoval was out of the office on March 24 and 25th. [DSOF 38.] Evidence shows that Plaintiff gave the letter to a detention officer and the letter went from the housing unit to ILS. While Sandoval was in the office on March 26th and possibly half the day on the 27th, there is no evidence that Sandoval went to ILS and opened the envelope, that ILS delivered the letter to Sandoval for inspection or that Sandoval intercepted the letter after ILS placed it in the Level 1 outgoing mail bin. [DSOF 39.] Sandoval avers that she did not collect outgoing mail from the ILS office for inspection nor did she collect mail from the outgoing mail bin located in the Level 1 mailroom. [DSOF 44-45.] Moreover, ILS does not deliver outgoing mail it sends to the CBIU for inspection and the CBIU does not go to ILS to inspect the mail ILS sends. [DSOF 31, 42.] Thus, there is no evidence linking Sandoval to the 651-page letter. Without evidence that Sandoval or Spaulding were in possession of the letter after it was placed in an envelope by ILS and before it arrived at his counsel's office, one can't infer that they had occasion to open it.

Plaintiff attempts to weave disparate facts together to support his belief that Sandoval and Spaulding opened his legal mail. But reasonable inferences from those facts do not implicate Sandoval or Spaulding. That Plaintiff was the subject of a mail subpoena is of no import because the subpoena excluded legal mail, thus Sandoval and Spaulding had no reason to open Plaintiff's legal mail. [DSOF 46.] Moreover, Plaintiff appears to be in possession of the mail that was copied in response to the subpoena and has not produced or seen a privileged letter. [DSOF, Ex. 3 at 27:6-25, 28:1-8.] Plaintiff asserts that Sandoval and Spaulding were the only CBIU officers assigned to process his legal mail, but the fact is that any CBIU officer could process Plaintiff's mail, not just Sandoval and Spaulding. [DSOF 14, 22.] Moreover, even if Sandoval and Spaulding processed Plaintiff's mail, there

7

is no evidence they opened or read his legal mail. [DSOF 5-7.] Both assert they did not open inmate legal mail. [DSOF 40-41.] Plaintiff's assumption that Sandoval and Spaulding opened his legal mail because Plaintiff obtained copies of envelopes of legal mail noted with Sandoval and Spaulding's serial numbers bears no fruit because the envelopes only show that the envelopes of legal mail sent to or from an inmate under a mail subpoena were copied. Without more, the envelopes do not support an inference that Sandoval or Spaulding opened his legal mail. Sandoval and Spaulding both aver that while the envelopes of legal mail are copied for subpoenas, the envelopes were not opened. [DSOF 16, 25-26.] Plaintiff points to photographs of mail that the Central Mailroom took and documentation in the MCSO's records indicating that his mail was received from the USPS opened or damaged. [DSOF, Ex. 7 at 19-21; Ex. 8 at 21-23.] The evidence shows the photographs and entries were taken and made by employees assigned to the Central Mailroom, not Sandoval or Spaulding. [DSOF 9-10, 47-49.] Evidence also shows that Sandoval and Spaulding did not handle mail received directly from the USPS, all incoming mail passes through the Central Mailroom first. [DSOF 8.] Reliance on photographs of envelopes of Plaintiff's legal mail and entries in the MCSO's records, without more, does not support an inference that Sandoval or Spaulding opened Plaintiff's 651-page letter or his legal mail in general.

Plaintiff's assertion that MCSO allowed Spaulding to access inmate legal mail so that it could be scanned and distributed to law enforcement of prosecutors is unsupported. Presumably, the basis of this assertion is based on an order issued in *State v. Bastian*, Maricopa County Superior Court Case No. CR2016-148530, but the court did not hold that MCSO allowed Spaulding to read and copy his legal mail. [DSOF, Ex. 10, at 5.] The court found that MCSO's policy is that officers are not allowed to open or read inmate legal mail and that the policy was not followed in the case of the defendant. The defendant in *Bastian* was subjected to a mail protocol that was implemented to address the defendant's complaints about his mail. [DSOF, Ex. 10 at 8-9.] This protocol was unique to that defendant. [*Id.* at 9.] Officers testified that the defendant was on a mail protocol where they were told to bring the defendant's mail to jail intelligence and that they "were not directed to bring any other inmate's mail to the supervisors for them to open outside of the inmate's

8

presence." [*Id.* at 8.] The court did not make any findings regarding Plaintiff's legal mail. Plaintiff's allegations that the court in *Bastian* made findings that Sandoval and Spaulding opened inmate legal mail and lied about it is inaccurate. In fact, the order made no findings regarding Sandoval. While the Court made findings regarding Spaulding, the court did not hold that Spaulding opened the defendant's legal mail or Plaintiff's legal mail. [DSOF, Ex. 10 at 5.] Accordingly, the order does not create a dispute of fact regarding whether Sandoval or Spaulding opened Plaintiff's legal mail.

Plaintiff cannot show by direct evidence or reasonable inference that Sandoval or Spaulding opened or read his 651-page letter to Ms. Bidwell. Similarly, Plaintiff cannot show that Sandoval or Spaulding opened or read any of his legal mail. As such, Sandoval and Spaulding are entitled to summary judgment.

**V.     There is no respondeat superior liability under § 1983.**

Plaintiff asserts that as supervisors, Sandoval and Spaulding are responsible for the acts of other CBIU officers. Setting aside the lack of evidence that anyone in the CBIU opened Plaintiff's legal mail, there is no vicarious liability for supervisors under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Where a supervisor doesn't directly participate in the alleged wrongful conduct, a plaintiff must plead facts showing the supervisor defendants "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Even if Plaintiff could show that someone in the CBIU opened his legal mail, that alone could not establish Plaintiff's supervisory liability claim against Sandoval or Spaulding under § 1983. Sandoval has never been a supervisor in CBIU and there is no evidence that either Sandoval or Spaulding were policymakers for the CBIU. Moreover, there is no evidence that anyone in the CBIU opened Plaintiff's legal mail. Accordingly, Plaintiff's claim that Sandoval and Spaulding are responsible for the actions of other CBIU staff has no merit.

## VI. Any official capacity claims against Spaulding and Sandoval fail.

To the extent Plaintiff brings any official capacity claims against Spaulding and Sandoval, they fail. A suit against an individual defendant in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)). The plaintiff must show that the individual had "final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Cortez v. Cnty. of L.A.*, 294 F.3d 1186, 1189 (9th Cir. 2002) (internal quotation marks omitted). There is no evidence that either Sandoval or Spaulding had final policymaking authority regarding how legal mail was handled. While Plaintiff alleges—without evidentiary support—that "the Jail Intel Unit's members have maintained a policy, custom and practice of interfering with attorney-client communications and or allowing officers to do so… ." Even assuming *arguendo* that such a policy exists—which it does not—there is no evidence that Sandoval or Spaulding were policymakers for the CBIU or the MCSO.

## VII. Sandoval and Spaulding are entitled to qualified immunity.

As Plaintiff cannot demonstrate that Sandoval and Spaulding violated his First or Sixth Amendment rights, they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Once the official pleads qualified immunity, the burden is on the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 939, 946 (9th Cir. 2017). As discussed in section IV above, there is no evidence that Sandoval or Spaulding opened Plaintiff's 651-page letter or any of his other legal mail. Accordingly, he cannot establish a constitutional violation. As such, Plaintiff cannot show that his rights were violated, and Sandoval and Spaulding are entitled to qualified immunity.

## VIII. Conclusion.

As Plaintiff cannot show that Sandoval or Spaulding opened his 651-page letter or any of his other legal mail, Plaintiff's First and Sixth Amendment claims fail. Accordingly, Sandoval and Spaulding are entitled to summary judgment.

**RESPECTFULLY SUBMITTED** this 7th day of September 2021.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: /s/ Maxine S. Mak
MAXINE S. MAK
JONATHAN C. SIMON
*Attorneys for Defendants Sandoval & Spaulding*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Dominic W. Lanza
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 46
Phoenix, AZ 85003-2161

Honorable John Z. Boyle
Magistrate Judge
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 75
Phoenix, AZ 85003-2120

and copy mailed to:

Victor Ted Hernandez #242848
ASPC Eyman Complex
Browning Unit
PO Box 3400
Florence AZ  85132
*Plaintiff Pro Per*

/s/S. Rojas

S:\CIVIL\CIV\Matters\CJ\2020\Hernandez v. Penzone CJ20-0084\Pleadings\MSJ.docx